**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

ANTONIO DANTZLER,

      Petitioner,

vs.

WILLIAM SPERFSLAGE,

      Respondent.

No. 17-cv-00119-CJW-MAR

**ORDER DENYING PETITION FOR
WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2254**

———————————

**TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................... 2

II.    PROCEDURAL HISTORY OF THIS FEDERAL CASE............................ 2

III.   FACTUAL AND PROCEDURAL HISTORY OF THE STATE CASE .......... 3

IV.   STANDARDS FOR SECTION 2254 HABEAS CORPUS RELIEF ............... 7

V.    DISCUSSION ............................................................................... 9

     A.    Destruction of Evidence—Return of Stolen Cash ............................10

     B.    Separate Trials on Two Robberies ..............................................14

     C.    Whether Petitioner's Statements to Police Were Voluntary.................18

VI.   CERTIFICATE OF APPEALABILITY...............................................20

VII.  CONCLUSION .............................................................................21

# I.   INTRODUCTION

This matter is before the Court for a decision on the merits of a petition for writ of habeas corpus filed by a state prisoner who claims the State of Iowa violated his constitutional rights.  Petitioner, Antonio Dantzler, was convicted of two counts of robbery in the first degree, and one count each for assault while participating in a felony, and possession of a firearm as a felon.  For the reasons that follow, the Court denies the petition and dismisses this case.

## II.   PROCEDURAL HISTORY OF THIS FEDERAL CASE

On October 26, 2017, petitioner filed a pro se petition seeking a writ of habeas corpus under 28 U.S.C. Section 2254 (Doc. 1) and a Motion to Appoint Counsel.  (Doc. 2).[1]  The following day, petitioner filed supplements to both of those documents.  (Docs. 3 & 4).  On December 4, 2017, the Court denied petitioner's motion to appoint counsel and ordered respondent to file an answer.  (Doc. 5).  In March 2018, the Court established a briefing schedule.  (Doc. 10).  After extensions of those deadlines, the parties fully briefed the case and on October 25, 2018, the Court deemed the case ready for decision.  (Doc. 25).  On January 15, 2019, the case was reassigned to the undersigned United States District Court Judge.

Petitioner requested an evidentiary hearing (Doc. 11), and respondent resisted the request.  (Doc. 12).  The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Title 28, United States Code, Section 2254(e)(2), generally bars evidentiary hearings in federal habeas proceedings.  Upon review of the pleadings and the record, the Court finds an evidentiary hearing is unnecessary to reach the merits of the petition in this case.

---

[1] Petitioner filed two additional motions for appointment of counsel (Docs. 11, 21), which the Court denied on December 17, 2018.  (Doc. 27).

### III.   FACTUAL AND PROCEDURAL HISTORY OF THE STATE CASE

The Iowa Court of Appeals previously summarized the relevant facts of the underlying criminal conduct in this case, which the Court finds accurate upon its own review of the record.

> On the afternoon of June 11, 2008, a Prime Mart convenience store and Dollar General store in Waterloo were robbed. Witnesses to the robberies reported the incidents by calling 911. Patrol officer, Brad Walter, testified that he responded to a call from dispatch reporting that suspects of the robbery fled in a dark colored SUV. As Walter drove toward the Dollar General store, he saw a black SUV with passengers matching the witnesses' description of the suspects. When Walter turned on his lights to perform an investigative stop of the SUV, a chase ensued. The SUV crashed into a house and the driver and passenger fled on foot through a residential neighborhood. Dantzler was arrested when a resident alerted officers that he was sitting on her front steps, she did not know him, and he matched the description of the suspects.
>
> Dantzler was taken into custody and interrogated by officers. During the interrogation, Dantzler repeatedly told an officer he was drunk. An officer recovered $577 dollars from Dantzler. A customer from Dollar General, Shirley Clemens, had reported that the perpetrator stole between $500 and $600 from her. She also reported that the cash was damp and at least one bill was tinted pink. Dantzler was arrested and charged with two counts of robbery in the first degree, assault while participating in a felony, and possession of a firearm as a felon. When the cash was examined by lab technicians at the department of criminal investigation, they noted the bills were cool or damp to the touch and one bill was tinted pink. No fingerprints were recovered from the bills. Clemens repeatedly requested return of the money. After discussion with the prosecuting attorney, the police photographed the bills and gave the money confiscated from Dantzler, to Clemens.

*State v. Dantzler*, No. 09-1363, 2010 WL 3155229, at *1 (Iowa Ct. App. Aug. 11, 2010) (footnote omitted).

The Iowa Court of Appeals further elaborated on the facts in ruling on petitioner's state post-conviction relief petition. The Court also finds these facts to be accurate based upon its own review of the record.

The evidence at trial showed the black SUV arriving at the Dollar General two separate times on the morning of June 11, hours before the robbery. Each time, three African–American males were seen arriving and departing the store together. After Dantzler was arrested, he was found to be in possession of two receipts from the Dollar General, matching the times the three men were observed on the store surveillance.

He was also found in possession of $577, which was damp and one bill was tinted pink. The customer victim at the Dollar General robbery asserted the perpetrator, wearing a black-hooded sweatshirt with a white piece of cloth over his face and caring a hand gun, took between five hundred and six hundred dollars from her. The money was damp because she had recently been in a flood. She had washed off the money, and let it dry on pink paper which turned the bills pink. Dantzler asserts the money found on him was pink because he had it in the pocket of his red pajama pants, the same pants he was wearing when arrested and the same pants seen on the Dollar General surveillance video the morning before the robbery. While the red pants could explain the color on the money, it does not explain the dampness of the bills.[2]

The same black SUV was seen in the area of the Prime Mart robbery. One of the perpetrators of that robbery was seen on store surveillance wearing a black-hooded sweatshirt and a piece of white cloth covering his face.

After the police chase following the Dollar General robbery, the hooded-sweatshirt and white cloth were found in the SUV, along with the gun and other items of clothing matching the description of the other suspects seen on the surveillance video. Dantzler was found on the porch of a nearby house, not wearing a shirt, but wearing pants and shoes matching the description of witnesses and the surveillance video. The resident of the house, who was watching the police search unfold, indicated to police she did not know who he was.

The white cloth was tested for DNA and the test found that Dantzler was a possible contributor to the profiles found. The test concluded,

---

[2] The Court recognizes that the last sentence in this paragraph is a conclusion, not a statement of fact.

4

> "Assuming more than one contributor, approximately 1 out of 100,000 unrelated individuals for [the first sample] and 1 out of 8,000 unrelated individuals for [the second sample] would be included as possible contributors to these mixture of profiles."

*Dantzler v. State*, No. 11-1586, 2012 WL 4513910, at *2-3 (Iowa Ct. App. Oct. 3, 2012).

The court of appeals also summarized the procedural history at the trial court level.

> Prior to trial, Dantzler's attorney filed a motion to suppress contending Dantzler's statements made during the interrogation were not admissible because he did not make a valid waiver of his Miranda rights and his statements were not voluntary because he was intoxicated. The court overruled this motion. Dantzler also urged, through a motion in limine, and by objection at trial, that photographs of the money were not admissible. He claimed that the prosecution's return of the actual money to Clemens violated his due process rights. He urged that the prosecution intentionally suppressed potentially exculpatory evidence because he could have had the actual money tested to prove the stained money was from the dye of the red pants he was wearing, and not from paper as Clemens testified. This would support his defense that the money was his and he was not the perpetrator in the Dollar General robbery. The district court rejected this motion and admitted the evidence at trial. It agreed to give a spoliation instruction to the jury. The jury returned guilty verdicts on all counts.

2010 WL 3155229, at * 1. Again, the Court finds this summary of the procedural history to be accurate based upon its own review of the record.

Also before trial, the government filed a Motion for Joint Trials, in which the government sought, among other things, to try petitioner in one trial for his involvement in both robberies. (Doc. 8-8, at 23, 25). The court granted petitioner's attorney's request for more time to consider the government's motion. (*Id.*, at 28-29). Thereafter, petitioner agreed to a joint trial on charges arising out of both robberies. (*Id.*, at 31-32).

Petitioner appealed his conviction, claiming that the district court erred when it (1) overruled his motion to suppress the statements he made during his interrogation, and (2) admitted photographs of the cash the government had returned to the victim. 2010 WL 3155229, at *2-3. The Iowa Court of Appeals affirmed petitioner's conviction, finding petitioner was not so intoxicated at the time of his interview that his will had been overborne and that the government did not violate petitioner's due process rights because it did not act in bad faith when it returned the cash to the victim. *Id.*, at *3-5. Petitioner unsuccessfully sought the Iowa Supreme Court's review of the Iowa Court of Appeal's adverse ruling, but in that appeal to the Supreme Court petitioner abandoned his claim that the interrogation was involuntary. (Docs. 8-5, 8-6).

Petitioner later applied for postconviction relief, raising six issues, including claims that his attorney was ineffective for failing to preserve the cash and failing to present evidence of petitioner's intoxication when officers interviewed petitioner. (Doc. 8-7, at 3-4; Doc. 8-8, at 248). The court denied the petition. In referencing the strength of the evidence, the court found that "vast circumstantial evidence confirmed [petitioner's] identity as the perpetrator" who robbed the victim of the cash. (Doc. 8-8, at 249). The court found petitioner "fail[ed] to meet his burden of proof to show that he has been prejudiced by any of the alleged ineffectiveness of counsel" and that "[t]he court cannot conclude, based upon a review of the entire case, that either trial counsel or appellate counsel were ineffective." (*Id.*).

On appeal from the district court's denial of his postconviction relief petition, petitioner claimed for the first time that his postconviction relief attorney was also ineffective for not arguing that petitioner's trial counsel was ineffective for not insisting on separate trials for the two robbery charges. 2012 WL 4513910, at *1. On this issue, the Iowa Court of Appeals rejected petitioner's argument, finding that petitioner had agreed to a joint trial and "cannot now complain that his attorney failed to insist on

severing the charges, when he agreed to have the charged tried together." *Id.* at *4. The Iowa Court of Appeals also held that a motion to sever would have been meritless in any event.

> Even if Dantzler had not agreed to have the charges tried together, we find there was no reasonable probability that the court would have severed the charges had trial counsel made the motion. The temporal relationship between the crimes, along with the similar facts (the suspect's clothing, transportation, weapon, and objective), indicate to us that any motion to sever the charges would have been denied under Iowa Rule of Criminal Procedure 2.6(1).

*Id.*

In a second postconviction petition, petitioner raised additional issues, none of which he raises with this Court. *Dantzler v. State*, No. 15-2068, 2017 WL 2465783, at *1 (Iowa Ct. App. June 7, 2017). The district court denied petitioner's second petition and the Iowa Court of Appeals affirmed the district court. *Id.* at *4.

## IV. STANDARDS FOR SECTION 2254 HABEAS CORPUS RELIEF

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). A federal court will not grant a petition for writ of habeas corpus "unless it appears that –(A) the applicant has exhausted the remedies available in the courts of the State [the exhaustion doctrine]; or (B)(i) there is an absence of available State corrective process; or (B)(ii) circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(A)-(B); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (holding that under the AEDPA, a petitioner must exhaust state remedies available). "Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "[T]he exhaustion

doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *Id.* at 845.

In Iowa, a prisoner must seek review through the "ordinary and established appellate review process" which includes an application for further review in the Iowa Supreme Court. *Welch v. Lund*, 616 F.3d 756, 758-59 (8th Cir. 2010) (quoting *Dixon v. Dormire*, 263 F.3d 774, 777 (8th Cir. 2001)) (holding that an Iowa prisoner failed to exhaust his claims in Iowa when his appeal of a state district court's decision to the Iowa Supreme Court was "deflected to the Iowa Court of Appeals" and he failed to file for further review in the Iowa Supreme Court).

Even when a prisoner's claim has been fully adjudicated in state court, a federal court still may not grant habeas relief unless the state court adjudication:

(1) [R]esulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) [R]esulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Lomholt v. Iowa*, 327 F.3d 748, 751 (8th Cir. 2003) ("In the habeas setting, a federal court is bound by the AEDPA to exercise only limited and deferential review of underlying state court decisions."). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curium) (citation omitted); *see also Nash v. Russell*, 807 F.3d 892, 896 (8th Cir. 2015) (holding that under the AEDPA, a federal court can grant habeas relief "only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States.") (citation and internal quotation marks omitted).

"[C]ontrary to . . . clearly established Federal law" as referenced in § 2254(d)(1), means that the "state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law, or [ ] the state court decides a case differently than this Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and writing for the majority) (second alternation in original). "[C]ircuit precedent does not constitute 'clearly established Federal law' . . .." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting 28 U.S.C. § 2254(d)(1)). Federal courts must be deferential in determining if the state court decision was based on "an unreasonable determination of the facts" as described in Section 2254(d)(2). "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The burden is on petitioner, and it is a heavy one. "The AEDPA standard is difficult to meet as it is intended as 'a guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Nash*, 807 F.3d at 897 (quoting *Harrington*, 562 U.S. at 102-03).

## V.    DISCUSSION

Petitioner raised nine issues in his petition. (Doc. 1).[3] Petitioner only briefed three arguments, asserting he is entitled to relief because: (1) the government improperly destroyed evidence when it photographed and returned $577 in stolen cash to a crime victim; (2) his trial attorney was ineffective for failing to move to sever trial on the two robbery charges; and (3) his statements to police were involuntary because he was

---

[3] Petitioner's "Supplement" to his petition (Doc. 3) is in all material respects identical to his petition (Doc. 1), except that the supplement is largely handwritten.

intoxicated or concussed. (Doc. 16). The Court will address each briefed ground in turn. The Court will not address the remaining issues petitioner failed to brief because he has abandoned them. *See, e.g.*, *Harper v. Nix*, 867 F.2d 455, 457 (8th Cir. 1989) (holding that claims not briefed by a petitioner's counsel are deemed abandoned); *Walters v. Maschner*, 151 F. Supp. 2d 1068, 1075 (N.D. Iowa 2001) (same).

### A.    *Destruction of Evidence—Return of Stolen Cash*

Petitioner claims the state court violated his constitutional rights by permitting the government to present evidence of the cash that it had returned to the victim. Reading the petition and petitioner's arguments liberally, petitioner asserts that the trial court should have suppressed the evidence and not allowed admission of the photographs of, or presumably even testimony about, the cash. Petitioner claims the spoliation instruction the trial court gave the jury was insufficient. Petitioner argues that the state's return of the cash to the victim deprived him of the opportunity to have the cash tested for fingerprints, DNA, and dye matching (to determine if the pink tint on one of the bills came from his red pajama pants). Petitioner hypothesizes that, had the cash been tested for fingerprints and DNA, it would have revealed only his and his wife's DNA because petitioner claims his wife gave him the cash.

The Due Process Clause of the United States Constitution imposes on the government the duty to preserve exculpatory evidence that could "play a significant role in the suspect's defense." *California v. Trombetta*, 467 U.S. 479, 488 (1984). For the destruction of evidence to be constitutionally material, the exculpatory nature of the evidence must be readily apparent to the government before the evidence was destroyed and the evidence must "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.*, at 489. When the exculpatory nature of the evidence is readily apparent, and the defendant is unable to obtain comparable evidence by other means, then whether the government acted in good

faith when destroying the evidence is irrelevant. *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). On the other hand, if the constitutional materiality of the evidence is not present—that is, if the exculpatory nature of the evidence is not readily apparent or a defendant has alternative comparative evidence—then whether the government acted in good faith is relevant in determining the appropriate remedy for the government's destruction of evidence. *Trombetta*, 467 U.S. at 488-98. *See also Youngblood*, 488 U.S. at 57-58 (explaining that good faith is relevant "when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.").

Here, the district court denied petitioner's motion in limine to bar admission of photographs of the cash and admitted the evidence at trial. The district court did, however, grant petitioner's request to provide a spoliation instruction to the jury.[4] The Iowa Court of Appeals affirmed the district court's ruling. In its opinion, the Iowa Court of Appeals cited and applied *Youngblood*. 2010 WL 3155229, at * 4-5. The court observed that this was a case where the exculpatory nature of the evidence was not readily apparent and that the additional testing petitioner requested was only potentially exculpatory. *Id.* at *4. The court found there was no evidence the government acted in bad faith in destroying the evidence, noting that the robbery victim was also a flood victim in immediate need of her cash. *Id.* at *5. The court further noted that the police did have the cash fingerprinted and concluded that there was no indication the government

---

[4] The instruction stated:

> If you find that $577.00 in cash existed and the State knowingly and intentionally destroyed the cash, you may, but are not required to conclude that the information or evidence contained in or on the cash would be unfavorable to the State and favorable to the defendant.

2010 WL 3155229, at *4 n.2.

believed the cash was otherwise exculpatory. *Id.* Finally, the court noted that the photographs the government took of the cash allowed petitioner to argue that the pink tint came from his pajamas. *Id.*

Under the doubly deferential standard by which the Court must review this case, the Court cannot conclude that the state court unreasonably applied federal law or unreasonably found facts from the evidence when it rejected petitioner's claim that the state improperly destroyed evidence. The state court correctly applied existing Supreme Court precedent. The state court correctly concluded that the potentially exculpatory nature of the evidence in this case was not apparent to the government. Rather, this was a case where there was only a theoretical possibility that the evidence would be exculpatory. Indeed, although petitioner keeps insisting that the cash could have revealed only his and his wife's fingerprints, the government tested the cash for fingerprints and found no latent prints. Petitioner can only speculate that DNA testing and dye testing would have been exculpatory. Thus, the state court was correct in considering whether the government acted in bad faith when it destroyed the evidence in fashioning a remedy.[5]

This Court does not find objectively unreasonable the state court's factual conclusion that the government did not act in bad faith. The Supreme Court has explained that federal courts "presume the [state] court's factual findings to be sound, unless [the petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. § 2254(e)(1)). As the

---

[5] Although the state court did not specifically address the second prong of the materiality test in *Trombetta*, the Court finds that it, too, would support the state court's conclusion that the evidence did not meet the materiality test. Here, petitioner had comparative evidence available to him. First, as the Iowa Court of Appeals noted, petitioner had photographs of the cash that allowed him to at least argue that the pink coloring on one of the bills came from his pajamas. More importantly, petitioner insists that his wife gave him the cash. (Doc. 16, at 6). Petitioner could have called his wife as a witness at trial to establish that it was her cash. Direct testimony from petitioner's wife was comparable evidence to scientific testing that theoretically could have supported petitioner's argument that the cash came from his wife.

Eighth Circuit Court of Appeals has explained, "[A] state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in state court proceedings' only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Jones v. Luebbers*, 359 F.3d 1005, 1011 (8th Cir. 2004) (quoting 28 U.S.C. § 2254(d)(2)); *see also Worthington v. Roper*, 631 F.3d 487, 508 (8th Cir.2011). Here, petitioner has not provided any basis to challenge the state court's factual conclusion that the government acted in good faith.

Petitioner argues for an extension of *Youngblood*, citing cases for the proposition that state courts have "held the strict application of *Youngblood* does not comport with the Notions [sic] of fairness and Due Process," and asserting that he should not have to prove the government acted in bad faith. (Doc. 16, at 9). *Youngblood* is the law, however, and was the clearly established law at the time the Iowa Court of Appeals affirmed petitioner's conviction. Thus, even if petitioner is correct that courts should extend the holding in *Youngblood*, this Court cannot grant habeas relief when the state court correctly applied the clearly established law. *See White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

Even if the Court were to find the state court erred, the Court finds the error harmless. Habeas petitioners are not entitled to relief absent a showing of actual prejudice. *Brecht v. Abrahamason*, 507 U.S. 619, 637 (1993) (holding that habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice") (internal quotation marks omitted)). Here, petitioner cannot show actual prejudice. First, he cannot show that the evidence would have been exculpatory because he cannot show that the cash would have revealed only his and his wife's DNA or that the pink tint on one bill came from his pajamas. Second, even if

only petitioner and his wife's DNA were recovered from the bills, that would not mean that it was not still possible that the cash belonged to the robbery victim. A person's DNA is not always left on or recovered from objects the person touches. Similarly, even if the one pink bill came back as having been dyed by petitioner's pajamas, that would not exculpate him. The evidence at trial showed that while in the jail petitioner took a few bills from one pocket of his pants and combined them with the wad of bills from the other pants pocket. (Doc. 8-8, at 174-75). Thus, it was possible that the pink bill did come from petitioner's pants, and yet petitioner was still guilty because the wad of bills came from the robbery victim. Third, the rest of the circumstantial evidence overwhelmingly proved petitioner's guilt. Petitioner had no explanation for why the bills were wet; the victim explained the bills were wet because of the flood. Petitioner had receipts from a Dollar General store in his pockets, he matched the description of one of the robbers, his DNA was found on an item in the suspect vehicle, and he was found in the vicinity of the suspect vehicle sitting on the porch of a house with which he had no connection, just to name a few pieces of significant evidence supporting petitioner's convictions.

Accordingly, the Court denies relief on petitioner's first ground of claimed error.

**B.    *Separate Trials on Two Robberies***

Petitioner argues that the state court violated his constitutional rights by refusing to separate the two robbery charges. (Doc. 16, at 12). More precisely, however, petitioner claims that the state court erred when it refused to find that petitioner's attorney was ineffective for agreeing to a joint trial of the charges from the two robberies. Petitioner takes issue with the state court's acceptance of the trial attorney's explanation that it was a strategy decision to try the cases together. (Doc. 16, at 13). Petitioner argues that "[n]o reasonable [t]rial strategy can condone" his attorney's decision and the

Iowa court's finding to the contrary was a misapplication of constitutional authority. (*Id.*, at 14).

Petitioner raises the issue on federal habeas review through the portal of claiming the state court erred in finding his attorney was not ineffective for agreeing to a joint trial. Thus, the question before this Court is whether the state court unreasonably applied federal law regarding ineffective assistance of counsel, or unreasonably found facts from the evidence when it rejected petitioner's claim that his trial counsel was ineffective. As the Eighth Circuit Court of Appeals has explained:

> Taken together, AEDPA and *Strickland* [*v. Washington*, 466 U.S. 668 (1984)] establish a "doubly deferential standard" of review. First, under *Strickland*, the state court must make a predictive judgment about the effect of the alleged deficiencies of counsel on the outcome of the trial, focusing on whether it is "reasonably likely" that the result would have been different absent the errors. The *Strickland* prejudice standard is less demanding than a more-probable-than-not standard, but the difference is "slight and matters only in the rarest case." To satisfy *Strickland*, the likelihood of a different result must be "substantial, not just conceivable." Under AEDPA, we must then give substantial deference to the state court's predictive judgment. So long as the state court's decision was not "contrary to" clearly established law, the remaining question under the "unreasonable application" clause of § 2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect. This standard was meant to be difficult to meet, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."

*Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (internal citations omitted).

Thus, the operative federal law is the *Strickland* standard for determining ineffective assistance of counsel. Under *Strickland*, counsel is ineffective if a petitioner can show "both deficient performance by counsel and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). Deficient performance means that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness

under prevailing professional norms." *Id.* A reviewing court's determination of whether counsel's performance was reasonable is highly deferential, for reasons well-articulated by the Supreme Court.

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689 (citations and internal quotation marks omitted).

To prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* at 698.

As noted above, petitioner raised this ineffective assistance of counsel claim for the first time on appeal from the district court's denial of his postconviction relief petition, arguing both his trial counsel and postconviction relief counsel were ineffective for agreeing to or failing to challenge the joint trial. As a result, the record below was not developed about what petitioner's attorney was thinking when he agreed to a joint trial.[6]

---

[6] The Iowa Court of Appeals concluded that petitioner "cannot now complain that his attorney failed to insist on severing the charges[ ] when he agreed to have the charges tried together."

It is not clear whether petitioner's attorney's decision to have a joint trial was a strategic decision. Thus, the appellate court could not and did not evaluate the performance prong of the *Strickland* test.

The Iowa Court of Appeals nevertheless rejected this claim under the prejudice prong of the *Strickland* test, concluding that any motion to sever the charges would have failed under Iowa Rules of Criminal Procedure. *Dantzler*, 2012 WL 4513910, at *4.[7] The Court finds that in reaching that decision the Iowa Court of Appeals did not unreasonably apply the *Strickland* test. To show prejudice, petitioner would have to show that the trial court's failure to sever rendered the trial "fundamentally unfair." *Wharton-El v. Nix*, 38 F.3d 372, 374 (8th Cir. 1994). Here, the state court found the two robberies were of a common scheme or plan and that finding is presumed to be correct. *Id.* at 372. The state court's factual finding was not clearly erroneous. The robberies took place on the same day and only hours apart, the same men surveilled both stores, and the description of the robbers, vehicle, and weapon were all similar. In Iowa, multiple offenses by the same defendant are tried together when they "arise from the same transaction or occurrence or from two or more transactions or occurrences constituting parts of a common scheme or plan," unless a party shows good cause why they should

---

2012 WL 4513910, at *4. Because petitioner did not raise this issue before the state postconviction court, however, there is nothing in the record to show whether petitioner was informed about or specifically agreed to a joint trial, or whether his attorney simply made the decision without petitioner's express agreement. For that reason, the Court finds that the Iowa Court of Appeals' assertion that petitioner agreed to a joint trial to be without adequate factual support in the record.

[7] To be clear, the Iowa Court of Appeals did not explicitly cite the *Strickland* decision. Rather, the court found petitioner's argument meritless and concluded that "[c]ounsel has no duty to raise a meritless issue." 2012 WL 4513910, at *4. In support of that holding, the court cited *State v. Jorgensen*, 785 N.W.2d 708, 712 (Iowa Ct. App. 2009). The *Jorgensen* court did explicitly cite to *Strickland* at that jump cite. Thus, I find that the Iowa Court of Appeals was applying the *Strickland* standard here, even though it did not explicitly reference the decision.

not be tried together. IOWA R. CRIM. P. 2.6(1). It was a reasonable application of *Strickland*, then, for the Court of Appeals to conclude that petitioner's counsel were not ineffective for failing to raise a claim that had no merit. In other words, it is not reasonably likely that the outcome would have been different had counsel raised the issue.

The Court also finds that it cannot grant habeas relief when, as here, the state court's decision turned on an application of state law. Respondent argues that this Court cannot grant habeas relief because the state court based its ruling on application of state procedural law and not federal law. Respondent points out that when petitioner argued in state court that his counsel were ineffective for failing to insist on separate trials for the two robberies, he did not argue that federal law required separate trials. Rather, petitioner argued that Iowa Rule of Criminal Procedure 2.6(1) required severance of the charges. (Doc. 23, at 21).[8] A state court decision that turns on state law, not federal law, is not subject to federal habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Accordingly, the Court denies relief on petitioner's second ground of claimed error.

### C.     Whether Petitioner's Statements to Police Were Voluntary

Petitioner argues that the state courts violated his constitutional rights by allegedly erroneously finding that statements he made to police officers were voluntary and thus admissible at trial. (Doc. 16, at 14-16). Petitioner claims he was intoxicated and possibly concussed, and that the state court should have found his statements were involuntary.[9]

---

[8] The Court notes, however, that before this Court petitioner is claiming that severance was required by operation of federal law. (*See* Doc. 16, at 12-14 (citing federal authority); Doc. 26, at 3).

[9] Petitioner also applies *Youngblood* to this issue, analogizing it to a destruction of evidence because, he argues, the police had a duty to test his blood and check to see if he was concussed and by failing to do so, deprived petitioner of the evidence to show his statements were

Apparently, the only incriminating statement petitioner made when questioned was to admit having been present in the suspect vehicle earlier in the day.

Respondent correctly points out that petitioner failed to exhaust this claim, precluding federal habeas review. Petitioner raised this claim on direct appeal to the Iowa Court of Appeals and lost. To have exhausted his state court review, petitioner had to further appeal that claim to the Iowa Supreme Court. *Welch*, 616 F.3d at 759 ("[A]n Iowa prisoner whose appeal is deflected to the Iowa Court of Appeals must file an application for further review in the Supreme Court of Iowa to exhaust his claims properly in the state courts."). A federal Court cannot review an issue when a petitioner has failed to fully exhaust the claim in state court. *Baldwin*, 541 U.S. at 29 ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.") (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995), and citing *O'Sullivan*, 526 U.S. at 845). Because petitioner did not give the Iowa Supreme Court an opportunity to address this constitutional issue, this Court is precluded from addressing the issue on federal habeas review.[10]

Even if petitioner had exhausted this claim in state court, the Court finds that the Iowa Court of Appeals did not unreasonably apply federal law when it concluded that petitioner's statements were admissible. The Iowa Court of Appeals applied federal law to determine the voluntariness of petitioner's statements and concluded that the district

---

involuntary. (Doc. 16, at 15-16). Petitioner never raised this argument in state court and thus never gave the state court an opportunity to address the argument. Even if the Court were to consider this argument here, the Court would reject it because the evidence is only potentially exculpatory and petitioner has made no showing the government acted in bad faith.

[10] Petitioner does not argue in his habeas petition that his failure to exhaust this claim in state court was the result of ineffective assistance of appellate counsel.

court did not err in finding petitioner's statements were voluntary. 2010 WL 3155229, at *2-3. This Court finds that the state court's conclusion was not unreasonable. Although intoxication is relevant to an inquiry about whether a statement is voluntary, it does not automatically render a statement involuntary. *United States v. Gaddy*, 532 F.3d 783, 788 (8th Cir. 2008). "Rather, [petitioner] must show his intoxication caused his will to be overborne." *United States v. Howard*, 532 F.3d 755, 763 (8th Cir.2008). Petitioner "points to nothing in the record indicating his state of intoxication was so severe his will was overborne," and the Iowa Court of Appeal's decision thus cannot be disturbed through habeas review. *Id.* at 763.

Accordingly, the Court denies relief on petitioner's third ground of claimed error.

## VI. CERTIFICATE OF APPEALABILITY

A certificate of appealability may be granted only when a petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749, 759-60 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Thus, "[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Here, the Court finds that petitioner has not made the necessary showing for his habeas claims. Thus, the Court will not grant a certificate of appealability. If petitioner

desires to seek further review of his petition, he may request a certificate of appealability from a Judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedeman v. Benson*, 122 F.3d 518, 520-22 (8th Cir. 1997).

## VII. CONCLUSION

For the reasons set forth herein, petitioner Antonio Dantzler's petition for writ of habeas corpus is **denied** and this action is **dismissed**. No certificate of appealability will be issued for any of petitioner's claims.

**IT IS SO ORDERED** this 2nd day of April, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa